# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LORETTA L. LOPEZ-MARTINEZ,**

      **Plaintiff,**

    vs.                              **Civ. No. 16-952 KK**

**NANCY A. BERRYHILL,[1]**
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

      **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 10) filed October 24, 2016 in support of Plaintiff Loretta L. Lopez-Martinez's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits. On December 20, 2016, Plaintiff filed her Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support ("Motion"). (Doc. 13.) The Commissioner filed a Response in opposition on March 21, 2017 (Doc. 17), and Plaintiff filed a Reply on April 5, 2017. (Doc. 18.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 13, 14.)

# I. Background and Procedural Record

Claimant Loretta L. Lopez-Martinez ("Ms. Lopez-Martinez") alleges that she became disabled on November 15, 2009, at the age of forty-two because of fibromyalgia, depression, glaucoma, migraine headaches, post-traumatic stress disorder (PTSD), and kidney problems. (Tr. 123, 128, 163, 171-172.[3])  Ms. Lopez-Martinez completed twelfth grade, and worked as a greenhouse supervisor, retail lead sales person, and public school kitchen manager.  (Tr. 130.) Ms. Lopez-Martinez last met the insured status requirements of the Social Security Act on December 31, 2013. (Tr. 475.)

On April 8, 2010, Ms. Lopez-Martinez protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*  (Tr. 113-14, 123.)  Ms. Lopez-Martinez's application was initially denied on June 7, 2010.  (Tr. 48, 49, 52-55.)  It was denied again at reconsideration on December 3, 2010.  (Tr. 50, 51, 60-72.)  On January 24, 2011, Ms. Lopez-Martinez requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 63-64.)  The ALJ conducted a hearing on April 4, 2012.  (Tr. 28-47.)  Ms. Lopez-Martinez appeared in person at the hearing and waived her right to representation.[4]  (Tr. 30-31, 96.)  The ALJ took testimony from Ms. Lopez-Martinez (Tr. 35-42), and an impartial vocational expert ("VE"), Pamela Bowman. (Tr. 42-46, 89, 91-92.)  On June 25, 2012, the ALJ issued an unfavorable decision.  (Tr. 8-23.) On August 14, 2013, the Appeals Council issued its decision denying Ms. Lopez-Martinez's request for review and upholding the ALJ's final decision.  (Tr. 1-6.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 10) that was lodged with the Court on October 24, 2016.

[4] Ms. Lopez-Garcia is represented in these proceedings by Attorney Michael Liebman.

On October 11, 2013, Ms. Lopez-Martinez timely filed a Complaint seeking judicial review of the Commissioner's final decision.  (USDC Civ. No. 13-989 GBW, Doc. 1.)  The parties fully briefed the issues raised for judicial review.  (*Id.*, Docs. 17, 18, 21, 24.)  On February 26, 2015, Magistrate Judge Gregory B. Wormuth, presiding by consent, entered an Order Granting Plaintiff's Motion to Reverse and Remand.  (*Id.*, Doc. 26, Tr. 499-524.)  Judge Wormuth held that the ALJ erred in assigning weight to Plaintiff's treating source opinions and in assessing her RFC.  (Tr. 524.)

On March 15, 2016, ALJ Gerald L. Meyer conducted a second hearing pursuant to the Appeals Council's order remanding the case.  (Tr. 552-92.)  Ms. Lopez-Martinez appeared in person at the hearing with her attorney Michael Liebman.  (*Id.*)  The ALJ took testimony from Ms. Lopez-Martinez (Tr. 557-583), and from an impartial VE, Diane Webber (Tr. 583-91).  On April 28, 2016, the ALJ issued an unfavorable decision.  (Tr. 470-87.)  Because this case had already been remanded following judicial review, Ms. Lopez-Martinez did not file written exceptions with the Appeals Council and instead timely filed the instant action before this Court as permitted by 20 C.F.R. § 404.984(d).

## II. <u>Standard of Review</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,*

3

373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. 20 C.F.R. § 404.1520(a)(4)(i-iv); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant successfully meets that burden, the burden of proof shifts to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(v); *Grogan*, 399 F.3d at 1261.

## III. <u>Analysis</u>

The ALJ made his decision that Ms. Lopez-Martinez was not disabled at step five of the sequential evaluation. He found that Ms. Lopez-Martinez had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b). The ALJ explained that

> [s]pecifically, the claimant could lift or carry ten pounds frequently or twenty pounds occasionally, stand and walk about six or sit six hours in an eight hour day with normal breaks, but must be allowed to stretch or change positions every hour. The claimant could occasionally climb ramps and stairs, stoop, kneel, and crouch. The claimant could never climb ropes, ladders, or scaffolding, crawl, be exposed to extreme heat or extreme cold, noxious odors or gases, unprotected heights or dangerous machinery, vibrating surfaces, or excessive noise. Mentally, the claimant was limited to understanding, remembering and carrying out only

simple instructions (just one to three step tasks) that were routine or repetitive without frequent changes in duties. The claimant was limited to only occasional contact with the public.

(Tr. 479-80.) Based on the RFC and the testimony of the VE, the ALJ concluded that Ms. Lopez-Martinez was not capable of performing her past relevant work, but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform and she was therefore not disabled. (Tr. 486-87.)

Ms. Lopez-Martinez asserts three arguments in support of her Motion as follows: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ failed to address the VE's testimony that light and sedentary exertional level jobs would be eliminated if Ms. Lopez-Martinez required greater limitations than articulated in the ALJ's hypothetical; and (3) the ALJ's evaluation of Ms. Lopez-Martinez's symptoms pursuant to SSR 16-3p is not supported by substantial evidence. (Doc. 13 at 20-26.) The Court agrees that the RFC is not supported by substantial evidence because the ALJ improperly evaluated the treating physician opinions. For this reason, this case requires remand.

## A.   <u>Relevant Medical History</u>

Ms. Lopez-Martinez has a long history of care and treatment for fibromyalgia, migraines, depression and post-traumatic stress disorder ("PTSD"). On March 8, 2012, Dr. Gerzain Chavez represented in a "To Whom It May Concern" letter that he treated Ms. Lopez-Martinez for six years beginning in 2006 for fibromyalgia, depression, and PTSD.[5]   (Tr. 410-11.)   The

---

[5] Dr. Chavez opined in his letter that Ms. Lopez-Martinez's health issues affected her ability to work. (Tr. 410-11.) Specifically, he opined that her fibromyalgia was a chronic condition causing widespread body pain, persistent fatigue, joint stiffness and unrefreshing sleep. (Tr. 410.) He further opined that her depression was a chronic condition that caused persistent low mood, loss of interest and enjoyment, and reduced energy. (*Id*.) Finally, he opined that her post-traumatic stress disorder caused anxiety, hypervigilance for threat, exaggerated startle response, irritability, difficulty concentrating and sleep disruption. (*Id*.)

Administrative Record, however, only contains Dr. Chavez's treatment notes for 2009 and 2010. Those treatment notes indicate that from February 9, 2009, through April 6, 2010, Dr. Chavez saw Ms. Lopez-Martinez ten times and consistently assessed, *inter alia*, myalgias/myositis and depression. (Tr. 221, 226, 230, 234, 237, 240, 244, 250, 255, 258.) Dr. Chavez also consistently noted that Ms. Lopez-Martinez was positive for decreased activity, generalized weakness, fatigue, irritability, lethargy, pallor, insomnia, back pain, muscle weakness, myalgias, neck stiffness, malaise, difficulty concentrating and rheumatologic manifestations. (Tr. 219-220, 225, 228-29, 232-33, 236, 239, 243, 249, 253.) Dr. Chavez prescribed various medications to treat Ms. Lopez-Martinez's pain, depression and PTSD, including Percocet, Lortab, Tramadol, Cymbalta, Xanax, Wellbutrin, Temazepam, Ambien, Imitrex, Treximet, and Phenergan. (*Id.*)

On July 24, 2009, Ms. Lopez-Martinez established care at the Santa Fe Community Guidance Center for Suboxone treatment related to chronic pain and opioid addiction. (Tr. 195, 215.) There she received primary physician care for administering and monitoring her Suboxone treatment, and managing her chronic pain and other health-related issues, and received psychiatric and behavioral health care for managing her mental health issues.

Dr. Mark Reininga provided primary care and Suboxone treatment for Ms. Lopez-Martinez from July 24, 2009, through December 27, 2012. Over the course of this three and a half year period, Dr. Reininga saw Ms. Lopez-Martinez approximately monthly (forty-one times) and consistently assessed, *inter alia*, opioid dependence and fibromyalgia. (Tr. 203, 205-06, 208-10, 213-15, 355-58, 397, 422-31, 726-88.) Dr. Reininga's treatment notes indicate that Ms. Lopez-Martinez regularly complained of fibromyalgia pain, back pain and migraines. (Tr. 206, 208-09, 210, 214, 398-99, 400-02, 428-31, 720-25, 741, 744, 748, 750, 754, 762, 765-66, 770, 787.) Although her pain level fluctuated, Dr. Reininga generally noted it between 5-7/10.

(Tr. 203, 205-06, 208-10, 213-15, 355-58, 397, 422-31, 726-88.) Dr. Reininga noted many times that Ms. Lopez-Martinez's level of distress was anxious, and that her appearance was sad, chronically-ill appearing, and depressed. (Tr. 745, 751, 757, 760, 763, 766, 770.) On March 21, 2012, Dr. Reininga prepared a "To Whom It May Concern" letter and opined that Ms. Lopez-Martinez suffered from serious symptoms of fibromyalgia and migraine headaches that were exacerbated by her trauma history, symptoms of PTSD and depression.[6] (Tr. 412.) Dr. Reininga opined that Ms. Lopez-Martinez was not able to sustain employment because "she [was] not able to predict when she [would] have sufficient energy and/or be free from pain in order to work consistently, even part-time." (*Id.*)

On February 18, 2010, concurrent with Dr. Reininga's care and treatment for chronic pain and opioid addiction, LPCC Susan Heumiller performed a behavioral health assessment on Ms. Lopez-Martinez and indicated Axis I diagnoses of major depressive disorder, recurrent, severe, and opioid dependence, and Axis III diagnoses of fibromyalgia and migraines. (Tr. 200-01.) LPCC Heumiller assessed a GAF score of 50.[7] (*Id.*) On April 2, 2010, Ms. Lopez-Martinez began attending twice weekly group therapy sessions related to her Suboxone treatment and continued to do so until October 11, 2010. (Tr. 320, 322-24, 326-30, 332-34, 336-39, 343, 345-54, 363-64.) On May 25, 2010, Ms. Lopez-Martinez began attending individual therapy sessions and continued to do so until October 19, 2010. (Tr. 321, 325, 331, 335, 341, 344, 362.) On June 17, 2010, LPCC Pamela Rogers prepared a Master Treatment Plan and similarly

---

[6] LPCC Pamela Rogers, Ms. Lopez-Martinez's mental health therapist, joined in Dr. Reininga's "To Whom It May Concern" regarding the impact of Ms. Lopez-Martinez's health issues on her ability to work. (Tr. 412.)

[7] A GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, 32, 34 (4th ed. 2000). A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34.

indicated Axis I diagnoses of major depressive disorder and opioid dependence, Axis III diagnoses of fibromyalgia and migraines, and a GAF score of 50. (Tr. 318-19.) On September 21, 2010, LPCC Rogers prepared a quarterly review in which her diagnostic impression remained the same. (Tr. 317.) On August 14, 2013, LPCC Rogers prepared a new behavioral health assessment and added post-traumatic stress disorder to Ms. Lopez-Martinez's Axis I diagnoses and back pain to her Axis III diagnoses. (Tr. 833.) She assessed a GAF score of 50. (*Id.*) Ms. Lopez-Martinez resumed individual therapy at that time.

On December 17, 2012, Psychiatrist Oksana Lyubarsky, M.D., began providing psychiatric evaluation and care of Ms. Lopez-Martinez and also temporarily assumed prescribing Suboxone for her when Dr. Reininga left Santa Fe Community Guidance Center and until she established primary care with Dr. Rollin Oden on January 31, 2013. (Tr. 774-79.) Dr. Lyubarsky saw Ms. Lopez-Martinez fourteen times from December 17, 2012, through December 8, 2015, related to her chronic pain, migraines, depression and PTSD. (Tr. 774-79, 780-84, 789-93, 794-96, 813-15, 816-18, 819-21, 826-28, 834-36, 851-58, 871-78, 904-12, 975-78, 1038-42.) Dr. Lyubarsky consistently noted that Ms. Lopez-Martinez reported experiencing anxious and fearful thoughts, depressed mood, fatigue, loss of energy, restlessness, sleep disturbance, and poor concentration, and consistently assessed her mood as anxious, irritable, and depressed. (*Id.*) Dr. Lyubarsky routinely prescribed Ibuprofen, Gabapentin, Topamax, Imitrex, and Cymbalta for Ms. Lopez-Martinez's chronic pain, migraines, depression and PTSD. *Id.*

On January 31, 2013, Mr. Lopez-Martinez established care with Dr. Rollin Oden as her new primary care provider at Santa Fe Community Guidance Center. (Tr. 797-800.) Dr. Oden assumed care for administering and monitoring her Suboxone treatment and managing her

chronic pain and other primary health-related issues. (Tr. 797-800.) The Administrative Record contains twenty-nine treatment notes from Dr. Oden from January 31, 2013, through January 13, 2016. (Tr. 797-812, 822-25, 837-40, 844-47, 859-70, 879-81, 893-95, 897-98, 900-903, 918-20, 922-25, 967-74, 979-90, 992-1002, 1011-18, 1023-27, 1029-33, 1043-47.) Dr. Oden regularly noted Ms. Lopez-Martinez's complaints of chronic pain, migraines, back and hip pain, sleep disruption, and worsening overall physical functioning. (Tr. 799, 801, 803, 805, 811, 844, 859, 879, 893, 897, 900, 918, 979, 987, 992, 997, 1002, 1011, 1015, 1023, 1029.) In his Review of Systems, Dr. Oden noted on twenty-two exams that Ms. Lopez-Martinez was positive for fatigue and/or lethargy related to her chronic pain and Suboxone treatment. (Tr. 806, 810, 823, 845, 860, 864, 894, 898, 901, 919, 923, 968, 973, 981, 985, 988, 994, 999, 1004, 1025, 1031, 1044.) He noted on nineteen exams that she was positive for excessive sweating and itching. (Tr. 806, 810, 823, 845, 860, 894, 898, 901, 919, 923, 968, 973, 981, 985, 988, 994, 999, 1004, 1025, 1031.) He noted on eighteen exams that she was positive for difficulty concentrating. (Tr. 806, 823, 845, 860, 864, 894, 901, 919, 923, 968, 973, 981, 985, 988, 994, 999, 1004, 1025.) Dr. Oden indicated on four occasions that Ms. Lopez-Martinez's pain level was generally a 7/10 and that the medications provided somewhere between 50% to 70% relief. (Tr. 801, 805, 822, 997.) Finally, Dr. Oden's treatment notes included periodic PHQ-2 and PHQ-9[8] results, which consistently indicated that Ms. Lopez-Martinez was positive for depression. (Tr. 822, 837, 900, 1015.)

On February 23, 2016, Dr. Oden prepared a Medical Opinion Re: Ability to Do Work-Related Activities (Physical). (Tr. 1059-60.) Dr. Oden was instructed

---

[8] The PHQ-9 and PHQ-2, components of the longer Patient Health Questionnaire, offer psychologists concise, self-administered tools for assessing depression. http://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health.aspx.

> [t]o determine your patient's ability to do *work-related activities on a day-to-day basis in a regular work setting*, please give us your opinion – **based on your examination** – of how your patient's physical capabilities are affected *by the impairment(s)*. Do not consider your patient's age, sex or work experience. Consider the medial history, the chronicity of findings (or lack thereof), symptoms *(including differing individual tolerances for pain, etc.)*, and the expected duration of any work-related limitations.

(Tr. 1059.) (Emphasis in original.) Dr. Oden assessed that because of her fibromyalgia and degenerative disc disease, Ms. Lopez-Martinez could occasionally and frequently lift less than 10 pounds; could stand and/or walk less than two hours in an 8-hour day; could sit less than two hours in an 8-hour day; could sit for 15 minutes before needing to change positions; could stand for 15 minutes before needing to change positions; needed the opportunity to shift at will from sitting or standing/walking; and needed to walk around five 5 minutes every 15 minutes. (Tr. 1059.) He assessed that she could never twist, stoop, crouch, or climb stairs or ladders. (Tr. 1060.) He assessed that she had reaching (including overhead), pushing/pulling, and feeling limitations. (*Id.*) He assessed that she needed to avoid all exposure to fumes, odors, dusts, gases, soldering fluxes, solvents/cleaners and chemicals; needed to avoid even moderate exposure to perfumes; and needed to avoid concentrated exposure to extreme cold and extreme heat. (*Id.*) He assessed that Ms. Lopez-Martinez needed to adjust positions frequently, and that he anticipated she would be absent from work more than four days per month as a result of her impairments. (*Id.*)

## B.     RFC Assessment

Ms. Lopez-Martinez argues that the ALJ's RFC is not supported by substantial evidence for two reasons. First, she argues that the ALJ failed to properly evaluate treating physician Dr. Rollin Oden's medical source statement. Second, she argues that the ALJ improperly gave great weight to nonexamining State Agency medical consultant Dr. Paul Cherry's opinion in

assessing Ms. Lopez-Martinez's mental RFC because it predated her psychiatric care and treatment with Dr. Lyubarsky, and because Dr. Cherry's opinion was inconsistent with Dr. Lyubarsky's treatment notes. (Doc. 13 at 20-24.) The Commissioner contends that the ALJ's RFC is supported by substantial evidence because the ALJ properly considered Dr. Oden's opinion and reasonably found that it was dated more than two years after the expiration of Ms. Lopez-Martinez's last insured date and was not consistent with his own medical findings. (Doc. 17 at 9-11.) The Commissioner further contends that the ALJ permissibly gave "great weight" to Dr. Cherry's opinion, and reviewed Dr. Lyubarsky's treatment notes and implicitly concluded that they did not detract from Dr. Cherry's assessment. (Doc. 17 at 11-12.)

Assessing a claimant's residual functional capacity is an administrative determination left solely to the Commissioner. 20 C.F.R. §§ 404.1546(c) and 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues are administrative findings, such as an individual's RFC). In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. § 404.1545(a)(2) and (3). The ALJ must consider and address medical source opinions and must always give good reasons for the weight accorded to a treating physician's opinion. 20 C.F.R. § 404.1527(c); SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Most

importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that her RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003).

### 1. Dr. Oden's Opinion

Dr. Oden became Ms. Lopez-Martinez's primary care treating physician in January 2013. As summarized above, he saw her almost monthly from January 2013 through January 2016, and completed an RFC assessment on February 23, 2016. *See* Section III.A., *supra*. The ALJ rejected Dr. Oden's medical source statement because it was dated more than two years after the expiration of Ms. Lopez-Martinez's insured status and because Dr. Oden failed to indicate when the limitations he assessed were established. (Tr. 484.) The ALJ further explained that Dr. Oden's opinion was inconsistent with his own medical findings and other orthopedic findings for the relevant period of time. (*Id.*) The ALJ cited to five of Dr. Oden's twenty-nine treatment notes to support his conclusion that Ms. Lopez-Martinez's physical exams were benign, and cited to one orthopedic note to support his conclusion that her back pain had improved and that there was "no need" for surgical intervention. (*Id.*) The Court is not persuaded that discounting Dr. Oden's assessment because it post-dated Ms. Lopez-Martinez's date of last insured was a legitimate reason for doing so given the facts of this case. The Court is also not persuaded that Dr. Oden's opinion is inconsistent with his own medical findings and other orthopedic findings

for the relevant period of time. For these reasons, the Court finds that the ALJ failed to properly evaluate Dr. Oden's medical source statement and provide legitimate reasons for rejecting it as he was required to do.

"Treating source medical opinions are [] entitled to deference," and must be either given controlling weight or assigned some lesser weight "using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 3741888, at *4. To ensure that treating source opinions receive proper deference, an ALJ reviewing the opinions of treating sources must engage in a sequential analysis. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, an ALJ must determine whether the opinion deserves controlling weight by considering whether it is both supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527. If one or both of these conditions is lacking, an ALJ is not free to simply disregard the opinion or pick and choose which portions to adopt. Instead, the ALJ must proceed to a second determination, where the ALJ must both (1) weigh the opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927" and (2) "give good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinions." *Watkins*, 350 F.3d at 1300-1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)). Although the ALJ's decision need not include an explicit discussion of each fact, the record must reflect that the ALJ *considered* every factor in the weight calculation. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). If the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so. *Watkins*, 350 F.3d at 1301; *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (according little weight is effectively rejecting an opinion).

### a. The Record Evidence During the Relevant Period of Time Supports Dr. Oden's Assessment

The ALJ improperly discounted Dr. Oden's assessment as out of time. The Tenth Circuit has explained that the relevant question in the face of a retrospective diagnosis is whether there is evidence of actual disability prior to the expiration of a claimant's insured status. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990); *see also Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (finding that post-dated-last-insured medical evidence generally is admissible in a Social Security disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition). Here, the parties do not contend that Dr. Oden was retrospectively *diagnosing* any physical or mental impairments. Instead, the issue is whether Dr. Oden was retrospectively *assessing* Ms. Lopez-Martinez's functional limitations based on her well established impairments when, "there is no indication from Dr. Oden as to when limitations of this severity were established." (Tr. 484.) Relying on *Potter* for guidance, the relevant question then is whether the record contains evidence during the relevant period of time such that the functional limitations Dr. Oden assessed could apply to Ms. Lopez-Martinez's pre-DLI condition.

The ALJ improperly concluded that Dr. Oden's treatment notes during the relevant period of time were negative and/or benign. The ALJ relied on certain negative findings from five of Dr. Oden's 2013 treatment notes, *i.e.,* normal respiratory and cardiovascular function, no evidence of memory or sensory loss, no motor weakness, and intact coordination, balance and gait, to conclude that Ms. Lopez-Martinez's exams were benign. (Tr. 484.) However, the ALJ failed to review the entirety of Dr. Oden's treatment notes and selectively chose only those parts that were favorable to a finding of nondisability, which he was not entitled to do. *Haga v.*

*Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). The ALJ further failed to consider that fibromyalgia pain may vary in severity over time and may even be absent on some days, and that "physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003) (quotation omitted); *see also* SSR 12-2p, 2012 WL 3104869, at *5 (explaining the nature of fibromyalgia pain). The rulings further explain that it is important to have access to longitudinal information about the person as is present here. SSR 12-2p, 2012 WL 3104869, at *5.

The Court's review of Dr. Oden's 2013 treatment notes demonstrates they are consistent with his assessed limitations based on Ms. Lopez-Martinez's fibromyalgia and degenerative disc disease. Dr. Oden saw Ms. Lopez-Martinez ten times from January 13, 2013, through December 31, 2013. (Tr. 797-800, 801-04, 805-08, 809-12, 822-25, 837-40, 844-47, 863-66, 867-70, 879-81.) During that time, Dr. Oden noted Ms. Lopez-Martinez's persistent complaints of chronic pain, migraines, worsening back pain, and worsening overall physical functioning. (Tr. 799, 801, 803, 805, 811, 844, 879.) In his Review of Systems, Dr. Oden noted on five exams that Ms. Lopez-Martinez was positive for fatigue and/or lethargy. (Tr. 806, 810, 823, 845, 860, 864.) He noted on four exams that she was positive for nausea, excessive sweating and difficulty concentrating. (Tr. 806, 810, 823, 845.) He indicated on three exams that her average pain level was 7/10 and that her medications provided 50% to 70% relief. (801, 805, 822.) Dr. Oden also noted that patient health questionnaires administered as part of her behavioral health care indicated that Ms. Lopez-Martinez was positive for depression. (Tr. 822, 837.)

Thus, when viewed in their entirety and in the context of chronic pain related to fibromyalgia, Dr. Oden's treatment notes were not benign.

Dr. Oden referred Ms. Lopez-Martinez for specialized care related to her worsening back pain during the relevant period of time. On March 20, 2013, Dr. Oden referred Ms. Lopez-Martinez for an MRI, the results of which were positive for progressive degenerative disc disease and increased foraminal stenosis. (Tr. 707-08.) On March 30, 2013, he referred her to a pain specialist, who recommended and administered a lumbar epidural steroid injection which provided only short term relief. (Tr. 710-12, 714-16.) On August 22, 2013, Dr. Oden referred Ms. Lopez-Martinez to neurosurgeon Dr. Hal Hankinson. (Tr. 714-16.) Dr. Hankinson noted on physical exam that Ms. Lopez-Martinez had back tenderness and decreased range of motion. (Doc. 714-16.) He assessed chronic lumbar pain compatible with degenerative disc disease at multiple levels and progressive "Modic changes particularly at L5-S1." (Tr. 715.) Contrary to the ALJ's conclusion that Dr. Hankinson indicated there was "no need" for surgery (Tr. 484), Dr. Hankinson noted that he knew of no immediate answer for Ms. Lopez-Martinez's back pain and that "certainly a multiple level fusion *would not be advisable*." (Tr. 715.) (Emphasis added.) Dr. Hankinson opined that he saw no contraindication to physical therapy which *might* help, and suggested that swimming *might* provide some relief. (*Id*.)

Additionally, other *treating* physicians, whose opinions the ALJ also rejected,[9] prepared "To Whom It May Concern" letters during the relevant period of time and explained how Ms. Lopez-Martinez's health issues impacted her ability to work. On March 8, 2012, Dr. Chavez explained the impact on Ms. Lopez-Martinez's health as the result of her

---

[9] The ALJ explained he rejected Dr. Chavez's opinion because Dr. Chavez prepared his "To Whom It May Concern" letter two years after he had stopped treating Mr. Lopez-Martinez. (Tr. 484.) The ALJ explained he rejected Dr. Reininga's opinion because it was not consistent with his own medical findings or other orthopedic findings for the relevant period. (*Id*.) The issue of whether the ALJ applied the correct legal standard in evaluating these treating physician opinions is not before the Court.

fibromyalgia, depression and PTSD. (Tr. 410-11.) On March 21, 2012, Dr. Reininga, joined by LPCC Rogers, opined that Ms. Lopez-Martinez suffered serious symptoms from fibromyalgia, migraine headaches, PTSD, and depression, and that pain and fatigue rendered her unable to sustain gainful employment, even on a part-time basis. (Tr. 412.) Further, Dr. Lyubarsky, Ms. Lopez-Martinez's treating psychiatrist, consistently noted during the relevant period of time that Ms. Lopez-Martinez reported experiencing, *inter alia*, fatigue, loss of energy, restlessness, sleep disturbance, and poor concentration. (Tr. 774-79, 780-84, 789-93, 794-96, 813-15, 816-18, 819-21, 826-28, 834-36, 871-78.) On September 3, 2013, Dr. Lyubarsky noted that Ms. Lopez-Martinez was "practically functioning on a very limited basis." (Tr. 836.)

The record contains substantial evidence to support an inference that Dr. Oden's assessed functional limitations related to Ms. Lopez-Martinez's pre-DLI condition. Therefore, discounting Dr. Oden's medical source statement because it post-dated Ms. Lopez-Martinez's date of last insured is not a legitimate reason for doing so given the evidence here. Further, in noting the insufficiency of Dr. Oden's assessment as lacking "indication . . . as to when limitations of this severity were established," (Tr. 484), the ALJ had a duty to re-contact Dr. Oden and clarify that information before issuing his determination. *See White v. Barnhart*, 298 F.3d 903, 908 (10th Cir. 2001) (the ALJ's duty to recontact the treating physician is triggered where the information received is inadequate and so incomplete that it cannot be considered); *see also* 20 C.F.R. § 404.1520b (explaining that medical opinions are considered insufficient when they do not contain all the information needed to make a determination or a decision whether a claimant is disabled). The ALJ failed to do so.

### b.    Dr. Oden's Assessment Is Consistent With His Treatment Notes and the Record As a Whole

The ALJ's explanation that Dr. Oden's medical source statement was inconsistent with his own medical findings or other orthopedic findings for the relevant period is not supported by substantial evidence.  *See* Section III.B.1.a., *supra*.  As discussed above, the evidence refutes the ALJ's conclusion that Dr. Oden's assessment was inconsistent with his examinations and treatment of Ms. Lopez-Martinez.  *Id.*  Further, the evidence from other treating and examining sources complements rather than undermines Dr. Oden's assessment.  *Id.*  Moreover, in light of Dr. Oden's long treatment history and familiarity with Ms. Lopez-Martinez's physical and mental impairments, and in light of the record evidence as a whole, the ALJ's perfunctory rejection of Dr. Oden's assessment does not convince the Court that he properly considered any of the regulatory factors in weighing Dr. Oden's opinion as he was required to do.  This is reversible error.  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (finding that the failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal).

### 2.    Mental RFC

Ms. Lopez-Martinez argues that the ALJ's RFC is also not supported by substantial evidence because the ALJ improperly gave great weight to nonexamining State Agency medical consultant Dr. Paul Cherry's opinion when it predated her treatment with Dr. Lyubarsky and was inconsistent with Dr. Lyubarsky's findings.  (Doc. 13 at 20-22.)  The Court agrees.

On May 21, 2010, Dr. Cherry reviewed Ms. Lopez-Martinez's medical records and prepared a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment.  (Tr. 278-91, 282-93.)  Dr. Cherry assessed that Ms. Lopez-Martinez had moderate limitations in her social functioning and concentration, persistence and pace.  (Tr. 292.)  He also

assessed that she was moderately limited in her ability (1) to understand, remember, and carry out detailed instructions; (2) to maintain attention and concentration for extended periods of time; and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 278-79.) In his determination, the ALJ accorded great weight to Dr. Cherry's opinion that Ms. Lopez-Martinez had the mental residual functional capacity for, *inter alia*, simple work. (Tr. 484-85.) In so doing, he explained that

> [d]espite longstanding treatment for mood disorder and anxiety/PTSD, mental status examination findings as reported by the claimant's treating psychiatrist were overall within normal limits (Exhibit 30F, pp. 57, 63, 72, 73, 76, 95, 98, 1010, 108, 113, 116, and Exhibit 31F, pp. 27 and 7).

(Tr. 485.)

Ms. Lopez-Martinez began treating with Dr. Lyubarsky on December 17, 2012, and saw her ten times during the relevant period of time. *See* Section III.A, *supra*. The Court's review of the record demonstrates that the ALJ improperly concluded that Dr. Lyubarsky's mental status exams were normal, failed to consider the entirety of her treatment notes, and selectively chose only those parts that were favorable to a finding of nondisability, which he was not entitled to do. *Haga*, 482 F.3d at 1208. Ten of the treatment notes the ALJ cited fall within the relevant period of time. (Tr. 776, 782, 791-92, 795, 814, 817, 820, 827, 835, 877.) Of those ten treatment notes, in all but two instances, Dr. Lyubarsky's mental status exams indicated that Ms. Lopez-Martinez's mood was anxious, depressed, irritable, and/or labile. (Tr. 776, 782, 791-92, 795, 814, 817, 820, 827, 832.) Many of Dr. Lyubarsky's mental status exams indicated that Ms. Lopez-Martinez was experiencing sleeping problems. (Tr. 776, 795, 820, 827, 832.) Dr. Lyubarsky's treatment notes consistently noted that Ms. Lopez-Martinez reported experiencing anxious and fearful thoughts, depressed mood, fatigue, loss of energy, restlessness,

sleep disturbance, and poor concentration. (Tr. 774, 780, 789, 794, 813, 816, 819, 826, 834, 871.) Dr. Lyubarsky's assessments remained constant and indicated Axis I diagnoses of PTSD, opioid dependence-remission, recurrent major depression, severe, and a GAF score of 50. (Tr. 777, 783, 792, 795, 814, 817, 820, 827, 835, 877.) On four exams, Dr. Lyubarsky noted that although Ms. Lopez-Martinez was compliant with her medications as prescribed, she was having minimal improvement and/or worsening symptoms. (Tr. 814, 816, 820, 827.) On September 3, 2013, Dr. Lyubarsky noted that Ms. Lopez-Martinez was "practically functioning on a very limited basis." (Tr. 836.)

The ALJ's review and evaluation of Dr. Lyubarsky's findings were insufficient. Dr. Lyubarsky was Ms. Lopez-Martinez's treating psychiatrist during the relevant period of time. As such, her findings were entitled to deference. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); SSR 96-2p, 1996 WL 3741888, at *4. Although Dr. Lyubarsky did not prepare a medical source statement per se regarding Ms. Lopez-Martinez's functional limitations related to her ability to do work related mental activities, her treatment notes support the chronic nature of Ms. Lopez-Martinez's PTSD and depression, and the persistent presence of, *inter alia*, fatigue, loss of energy, and poor concentration. Dr. Lyubarsky's treatment notes also consistently reflected a GAF score of 50, a score Ms. Lopez-Martinez maintained throughout her six years of psychiatric and behavioral health care she received at Santa Fe Community Guidance Center. The ALJ completely ignored these findings. *See generally*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (considering GAF scores and expressing "concern" with scores of 46 and 50); *Lee v. Barnhart*, 117 Fed.Apx. 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . ." but "[a] GAF score of fifty or less, . . . does suggest an inability to

keep a job."). For these reasons, the Court finds the ALJ erred in according great weight to Dr. Cherry's opinion in light of Dr. Lyubarsky's findings. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (the opinion of an agency doctor, who never sees the claimant, is generally entitled to less weight than the opinion of a treating or examining doctor). The ALJ further failed to properly consider and evaluate Dr. Lyubarsky's findings as a treating physician, as he was required to do.

For all of the foregoing reasons, the Court finds that the ALJ's RFC is not supported by substantial evidence. The ALJ failed to apply the correct legal standards in evaluating Dr. Oden's medical source statement. The ALJ also improperly accorded Dr. Cherry's opinion great weight in light of conflicting evidence from Ms. Lopez-Martinez's treating psychiatrist. Finally, the ALJ failed to apply the correct legal standards in evaluating Dr. Lyubarsky's findings. On remand, the ALJ is directed to properly evaluate Dr. Oden's medical source statement and Dr. Lyubarsky's findings in accordance with Tenth Circuit Case law, and the applicable regulations and rulings. The ALJ is further directed to recontact Ms. Lopez-Martinez's treating physicians, as necessary, to determine her functional limitations to do work related physical and mental activities during the relevant period of time.

## C.     Remaining Issues

The Court will not address Ms. Lopez-Martinez's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**D.**    **Immediate Award of Benefits**

The Court declines to order an immediate award of benefits because of the need for clarification regarding whether the limitations Dr. Oden assessed apply during the relevant period of time.

## IV.  Conclusion

For the reasons stated above, Ms. Lopez-Martinez's Motion to Reverse and Remand for Rehearing (Doc. 13) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**